IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. GLR 19-0503 |
| | * |
| RICHARD WHITE, | * |
|    Defendant. | * |
| | * |
| | * |

**GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENDANT'S PRETRIAL MOTIONS**

The United States of America submits this consolidated response in opposition to the defendant's pretrial motions as follows: Motion to Suppress Evidence from Warrantless Arrest on May 20, 2019 (ECF 40), Motion to Suppress Evidence from Warrantless Seizure of Defendant's Car on May 20, 2019 (ECF 41), Motion to Suppress Evidence From Search of Defendant's Car on May 23, 2019 Due to Unreasonable Delay in Obtaining Search Warrant (ECF 42), Motion to Suppress Evidence From Search of Defendant's Car on May 23, 2019 Due to Lack of Probable Cause and Omissions From the Search Warrant Application and Request for a Franks Hearing (ECF 43) and Motion to Suppress Evidence From Search of Defendant's Car on May 23, 2019 Due to Overbreadth and Lack of Specificity of Search Warrant (ECF 44). For the reasons that follow, the motions should be denied.

**I.      POSTURE OF CASE**

On October 22, 2019, a federal grand jury in the District of Maryland returned an Indictment charging the defendant with Possession With Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §841(a); Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §922(g); and Possession of a Firearm in Furtherance of a Drug Trafficking

1

Crime, in violation of 18 U.S.C. §924(c). The defendant was arrested on these charges on November 5, 2019, and he remains detained pending trial, which is scheduled to commence on January 24, 2022.

## II. FACTUAL BACKGROUND

### A. Events of May 18, 2019

On May 18, 2019 at approximately 10:09 AM, Officer Brendon Brown of the Baltimore Police Department (BPD) responded to the 2600 block of Polk Street for a ShotSpotter alert.[1] Upon his arrival, Officer Brown observed a white van bearing Virginia tag USF 5110 with the passenger door open parked along Polk Street. Officer Brown checked the vehicle for any victims, with negative results. While still in the 2600 block Polk Street, a call was dispatched for a shooting at 1762 Homestead Street, approximately one-tenth of a mile from the location of the white van. Officer Brown located the victim, who said he was confronted by an unknown, dark-skinned black male, armed with a gun, who took his keys and shot at him. The victim stated he was driving his van from the Latrobe Homes when he realized he was being followed by a gold-colored vehicle. The victim parked along the 2600 block of Polk Street and walked across the street towards the store located at 2646 Polk Street. According to the victim, the suspect got out of the gold car that had been following the victim, approached him brandishing a black semi-automatic handgun, and told the victim "don't move." The suspect demanded the victim's keys and ordered him to walk back to his van. The victim complied and remained on the sidewalk along the passenger side of his van. According to the victim, the suspect said he was going to get his phone and make a call, and that if the victim moved, the suspect would kill him. As the suspect walked across Polk Street toward the gold vehicle, the victim ran down Polk Street toward

---

[1] ShotSpotter technology is a network of acoustic sensors that detects gunshots, and immediately notifies BPD officers of the location of the incident.

Homestead Street. While the victim was running, he heard 4 gunshots coming from the area of the suspect. The victim ran eastbound on Homestead towards his mother's residence. He looked back in the direction of the suspect and observed the gold vehicle travelling westbound on Homestead Street towards Kirk Avenue. The victim identified his white van as the one bearing VA tag USF 5110 parked on Polk Street with the passenger door open.

This incident was captured on surveillance cameras located at 2646 Polk Street. The camera footage shows the victim's white van park across from 2646 Polk Street. Seconds later, a gold vehicle pulls into view of the camera in front of 2646 Polk Street, then reverses to park on the opposite side of the street from where the victim's van is parked. Once parked, only the front portion of the gold vehicle is seen on surveillance. The victim gets out of his van and begins to cross the street. As he is crossing the street, a dark-skinned black male (the suspect) approaches the victim. The camera shows the suspect holding what appears to be a handgun, which is partially covered by a jacket the suspect is holding on his right side. The suspect takes the victim's keys from him and walks the victim back to the white van. The suspect then walks back towards the gold vehicle, at which time the victim flees the area on foot. The suspect is seen running towards the victim, pointing the gun and firing several rounds in the victim's direction. The suspect then walks back towards the gold vehicle and out of view of the camera. Seconds later, the gold vehicle begins moving. It then speeds away northbound on Polk Street and turns westbound on Homestead Street. No one else besides the suspect is visible in the area of the gold vehicle on the camera footage. Based on the timing of the gold vehicle's movements and the suspect's appearance, and the victim's description of the vehicle and suspect, investigators were able to identify the gold vehicle as the suspect's vehicle.

Prior to this incident occurring, Officer Brown was in the area of the 2500 block of Harford Road on a traffic initiative using license plate reader (LPR) technology, a computer-controlled

camera system which captures all license plate numbers that come into view, along with the date and time. Officer Brown's LPR captured the victim's white van travelling in the area. The victim's vehicle passed the LPR at 10:05:40 AM. A gold Chevy Malibu bearing MD tag 2DP0705 passed the LPR eight seconds later at 10:05:48 AM. Investigators compared the LPR image of the gold Chevy Malibu with MD tag 2DP0705 with the suspect's gold vehicle on the camera footage of the incident, and concluded that they were the same vehicle.

On May 19, 2019, Detective Marcus Smothers of the BPD's Citywide Robbery Unit created a "Wanted Vehicle" flier—attached as Exhibit 1—and disseminated it throughout the police department. The flier contained the vehicle description, tag number, vehicle identification number, a brief synopsis of the crime being investigated, and a description of the shooting suspect ("black male, 30's 6'1"-6'2", stocky build wearing a black and burgundy shirt").[2] The flier further advised that the operator of the vehicle was wanted for questioning and directed any unit that came into contact with the vehicle to have it towed to the nearest district for processing.

### B. Events of May 20, 2019 – the Arrest of the Defendant

On May 20, 2019 at approximately 9:45 AM, using the LPR information obtained by Officer Brown, Baltimore Police Detective Foster and other units located the suspect's gold Chevy Malibu bearing MD tag 2DP0705 in the 1900 block of W. Mosher St. Police units began surveillance of the vehicle. They eventually saw the defendant exit the gold Chevy Malibu bearing MD tag 2DP0705 in the 1200 block of Greenmount Avenue. Officers stopped the defendant, placed him in handcuffs, and detained him while they reached out to Citywide Robbery and Detective Smothers. The location where the defendant was stopped was less than two miles

---

[2] Although not included in the Wanted Vehicle flier, Detective Smothers noted in his BPD Progress Report that the victim also said that the suspect had a goatee and stubble on the sides of his face.

from the location of the shooting. The defendant was a stocky, dark-skinned black male with a goatee, and, according to the Statement of Charges filed in the District Court of Maryland for Baltimore City,[3] is 6'2" and was 32 years old at the time. In other words, the defendant matched the exact physical description of the shooting suspect who had fled from the scene of the shooting in the same Chevy Malibu just two days earlier.

The defendant was advised by officers on scene that he was not under arrest but was being detained for further investigation, and that he would be transported to the station to meet with someone who could speak with him.[4] As noted on the BPD Suspect/Witness Activity Sheet, the defendant was transported to the Citywide Robbery Unit at 10:19 AM, and the Chevy Malibu was towed to the Northern District station to be processed. The defendant's personal information was collected at 10:35 AM, and the defendant's interview with Detective Smothers began at 11:18 AM. At the start of the interview, Detective Smothers reviewed a BPD Explanation and Waiver of Rights form with the defendant, and the defendant waived his *Miranda* rights. The defendant went on to deny knowledge of the shooting, but he also made some statements that could be used as evidence of a motive to harm the victim.[5] At the conclusion of the interview, Detective Smothers arranged for the victim to respond to the police station to review a photo array of the defendant. The photo array was administered at 2:30 PM, at which time the victim advised that he was unable to identify anyone. The defendant was released at 2:55 PM.

**C. Search of the Chevy Malibu**

---

[3] The defendant was originally charged in state court with charges arising from this investigation.

[4] None of the officers who stopped and detained the defendant were robbery detectives involved in the investigation with Detective Smothers.

[5] Specifically, the defendant admitted that his daughter went to an elementary school where the victim had been accused of sexual misconduct. [IS THAT RIGHT??]

5

Detective Smothers obtained a search warrant for the gold Chevy Malibu on May 23, 2019, and it was executed on the same date. Police recovered a loaded Smith & Wesson handgun from the center console of the vehicle. From the backseat passenger area of the vehicle, police recovered a plastic bag containing 31 clear gelatin capsules of heroin, 22 clear-top vials of heroin and cocaine, 1 bag of cocaine, and 27 plastic flip-top containers of cocaine. In addition, police recovered a rental agreement from Rent-A-Wreck Baltimore showing the vehicle had been rented to Richard White (the defendant) from May 13, 2019 through May 20, 2019.

## III. DEFENSE MOTIONS

### A. Motion to Suppress Evidence from Warrantless Arrest on May 20, 2019 (ECF 40)

The defendant argues that he was arrested without a warrant and without probable cause on May 20, 2019 in violation of the Fourth Amendment, and that any evidence obtained as a result should be suppressed.[6] The court should deny the motion because the defendant was placed in investigative detention based on reasonable articulable suspicion. In the alternative, probable cause existed to arrest the defendant.

1. <u>Reasonable Articulable Suspicion Justified the Investigative Detention</u>

An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion, *Terry v. Ohio*, 392 U.S. 1 (1968). Officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the stop of the defendant. *Id.* at 21; *see also United States v. Taylor*, 857 F.2d 210, 213 (4th Cir. 1988) (law enforcement may stop an automobile to investigate based on a reasonable suspicion that its occupants are engaged in criminal activity). This standard is "less demanding .

---

[6] The only evidence obtained as a result of the defendant's detention on May 20, 2019 was the defendant's statements to Detective Smothers. As discussed further below, the police had independent probable cause to tow and search the Chevy Malibu involved in the shooting (and they also obtained a warrant to search the vehicle).

. . than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Moreover, under the reasonable suspicion standard, only a "minimal level of objective justification" is required. *Id.*

In *United States v. Hensley*, the Supreme Court found that police were justified in making an investigatory stop of the defendant to investigate a completed crime, relying on another police department's "wanted flyer" seeking information about an armed robbery because the defendant matched the description contained in the flyer. 469 U.S. 221, 229 (1985). The court ruled that "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Id.*; *see also United States v. Marxen*, 410 F.3d 326, 331–32 (6th Cir. 2005) (police had reasonable suspicion to stop a car that an eyewitness to an armed robbery reported was the getaway car); *United States v. Tilmon*, 19 F.3d 1221, 1228–29 (7th Cir. 1994) (police had reasonable suspicion that car and its driver were involved in bank robbery, justifying an investigatory stop, in light of exact match on unique automobile and driver's fitting general description of bank robber); *United States v. Jackson*, 652 F.2d 244, 248–49 (2d Cir. 1981) (police had reasonable suspicion to stop suspected bank robber where age, race, hairstyle and coat color matched description of robber, despite the fact that he was not wearing the exact clothing described by eyewitnesses). Here, as in *Hensley* and subsequent cases, the police had reasonable suspicion to detain the defendant for questioning because he was driving the vehicle that fled the scene of the shooting just two days earlier; he matched the description of the suspect; and he was located less than two miles from where the shooting occurred.

In assessing whether a detention is too long in duration to be justified as an investigative stop, the court should examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to

detain the defendant. *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Here, the defendant was placed in investigative detention while officers diligently attempted to confirm or dispel suspicions of his involvement in the robbery and shooting. He was advised that he was not under arrest but merely being detained for questioning. Although the defendant was handcuffed, a brief but complete restriction of liberty is valid under *Terry*. *United States v. Elston*, 479 F.3d 314, 319 (4th Cir. 2007). The defendant was brought to the police station at approximately 10:19 AM to be interviewed by the primary detective assigned to the investigation. Once the defendant was interviewed, Detective Smothers arranged for the victim to come down to the station as soon as possible, arranged for a photo array to be created and administered, and then released the defendant at approximately 2:55 PM. The defendant's detention was relatively brief—less than five hours—and was justified by the need to question him regarding the robbery and shooting and arrange for a photo array to be administered to the victim.

2. Probable Cause Justified an Arrest

Whether an arrest is constitutionally valid depends upon whether, at the moment the arrest was made, the officers had probable cause to make it—that is, whether, at that moment, the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar v. United States*, 338 U.S. 160, 175–176 (1949); *Henry v. United States*, 361 U.S. 98, 102 (1959). "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar,* 338 U.S. at 176.

Here, the police had clear probable cause to arrest the defendant on May 20, 2019. A man had been the target of a shooting just two days before in broad daylight, and the defendant, who

8

fit the description of the shooter, was seen driving and exiting the car captured on video at the scene of the robbery and shooting. Photos of the Chevy Malibu taken at the police station are attached as Exhibits 2 and 3. The camera footage will be available for the Court's review at the time of the hearing in this case, and the tape will easily establish probable cause for the defendant's arrest. *See United States v. Williams*, 10 F.3d 1070, 1075–76 (4th Cir. 1993) (police had probable cause to conduct warrantless arrest of suspects who occupied a vehicle matching tipster's description of vehicle used in prior bank robbery and who appeared to be casing another bank). The police had probable cause to arrest the defendant, and the motion should be denied.

### B. Motion to Suppress Evidence from Warrantless Seizure of Defendant's Car on May 20, 2019 (ECF 38)

The defendant argues that the Chevy Malibu was seized without a warrant in violation of the Fourth Amendment and that any evidence subsequently recovered from the Chevy Malibu should be suppressed. The defendant's motion should be denied, as probable cause existed to justify a search and seizure of the vehicle under the automobile exception.

A warrantless search of a car is valid if based on probable cause. *California v. Acevedo*, 500 U.S. 565, 569–570 (1991); *Chambers v. Maroney*, 399 U.S. 48 (1970), *Carroll v. United States*, 267 U.S. 132 (1925).

In support of its motion, the defense alleges that the Chevy Malibu was merely similar in description to the suspect vehicle captured in surveillance footage around the time of the shooting on May 18, 2019, and that the license plate of the Chevy Malibu was captured "several blocks from the scene of the shooting." Def. Motion at ¶ 10, fn 1. But the defendant omits key facts about the Chevy Malibu that establish probable cause. As described above, the victim reported to Officer Brown that a gold vehicle had been following him on Harford Road prior to turning left onto Montpelier and then right onto Polk Street. The surveillance footage shows the suspect

vehicle park across the street from the victim right after the victim parks his van. It is from this suspect vehicle that the assailant emerges, and it is in this suspect vehicle that the suspect flees after the robbery and shooting. Not only does the Chevy Malibu driven by the defendant match the vehicle described by the victim and seen on the surveillance footage, but the Chevy Malibu was captured on Officer Brown's LPR following the victim on Harford Road just before the robbery and shooting, registering on the LPR just seconds after the victim's van. In other words, based on the victim's description of the vehicle, the surveillance footage, and the LPR, investigators were able to identify *the exact* vehicle used in the robbery and shooting.

Probable cause existed to believe that evidence of the robbery and shooting on May 18, 2019 would be found in the Chevy Malibu when it was spotted two days later, close to the location of the crime, and being driven by a male who matched the victim's description of the suspect.

### C. Motion to Suppress Evidence from Search of Defendant's Car on May 23, 2019 Due to Unreasonable Delay in Obtaining Search Warrant

The defendant asserts that a three-day delay in searching the vehicle violated the defendant's Fourth Amendment rights. The defendant is incorrect, and his motion should be denied.

It is well established that police can search a vehicle without a warrant if they have probable cause to believe it contains contraband or evidence of a crime, and that the automobile exception continues to apply even after the vehicle is towed and impounded. Following *Chambers*, if the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle. *California v. Acevedo*, 111 S.Ct. 1982, 1986 (1991); *see also U.S. v. Brookins*, 345 F.3d 231, 238 (4th Cir. 2003) ("Because we conclude that the officers were entitled to search the car without obtaining a search warrant at the time it was discovered, the seizure and subsequent searches were lawful.")

In *United States v. Gastiaburo*, 38 days transpired between the seizure of the defendant's car and the subsequent warrantless search that occurred after the car was seized and impounded. 16 F.3d 582 (4th Cir. 1994).  The defendant argued that the delay was "per se unreasonable" and "violated the temporal limit on the automobile exception." *Id*. at 587.  In rejecting the argument, the court noted that there is no "temporal limit" to the automobile exception, and the warrantless search of a car need not occur contemporaneously with the car's lawful seizure.  *Id.* The court concluded that the passage of time between the seizure and the search of Gastiaburo's car was legally irrelevant.  *Id.*

In *United States v. Thomas,* 819 Fed. App'x 171 (4th Cir. 2020) (unpublished), the defendant and his passenger were stopped in a vehicle that matched the description of a getaway vehicle in a robbery.  They were placed under arrest, and the vehicle was towed to the police department's evidence unit, where it was searched six days later.  *Id*. at 172.  The defendant argued that the evidence seized from the vehicle should be suppressed because 1) the automobile exception no longer applied, and 2) the search warrant was invalid.  *Id*.  Relying on *Gastiaburo,* the court concluded that the police had probable cause to believe the vehicle contained evidence of the robbery, and that the automobile exception continued to apply even after the vehicle was towed to the police department.  *Id*.  As such, the court did not need to reach the issue regarding the validity of the search warrant.  *Id*.

Similarly, in this case, BPD had probable cause to believe that the Chevy Malibu contained evidence of the robbery and shooting.  The automobile exception continued to apply even after the vehicle was towed to the Northern District Station, and the three-day delay of the actual search was legally irrelevant.  The defendant's motion should be denied.

**D. Motion to Suppress Evidence from Search of Defendant's Car on May 23, 2019 Due to Overbreadth and Lack of Specificity of Search Warrant**

For the reasons set forth above, the police did not need a search warrant to search the Chevy Malibu, as the automobile exception applied.  Therefore, there is no need for the court to reach the issue of whether the warrant was overbroad or lacking in specificity.  Nonetheless, the warrant

was sufficiently particularized and should be upheld.

The defendant argues that the search warrant lacks specificity and violates the Fourth Amendment's particularity requirement. The defendant focuses on Exhibit A, titled "Property to be Seized and Searched," which lists the following:

1. Indicia of occupancy, residency, and/or ownership of the premises described above, including, but not limited to: repair bills, mail, and keys.

2. Photographs, digital images, in particular, photographs of dirt bikes, of conspirators, of assets, and/or of contraband.

3. Any electronic devices capable of accessing the internet or social media; cellphones, laptops, tablets, computers of any type.

4. Fruits and instrumentalities of the crime of robbery and all other crimes.

5. Address and or telephone books, rolodex indexes, pagers or pager numbers and papers reflecting names and or telephone numbers of co-conspirators.

6. United States currency.

7. Controlled dangerous substances.

The defendant argues that only item 4, "Fruits and instrumentalities of the crime of robbery and all other crimes," is potentially related to this investigation, but that "there is zero evidence anywhere of a robbery." Def. Motion at ¶ 15-17. To the contrary, the affidavit laid out specific facts establishing probable cause to search the vehicle for evidence of robbery. Specifically, page 5 of the affidavit described how the victim reported to the police that during the encounter, the gunman demanded his keys, and the victim complied. Other items listed in Exhibit A were also particular to the crime being investigated. For instance, item 1—covered evidence pertaining to ownership of the vehicle, which was clearly relevant in that it would link the owner to the robbery, and to any evidence of robbery found within the vehicle (and indeed, lease paperwork for the Chevy Malibu was recovered in the vehicle during the search). Items 2,

3, and 5, which covered photographs, electronic devices, and other evidence of co-conspirators, were relevant based on the victim's report that the gunman made a phone call after taking the victim's keys and ordering him not to move, as documented on page 5 of the affidavit.

It is true that the purpose of the particularity requirement is to prevent the "general, exploratory rummaging in a person's belongings" that occurs when a warrant is too general. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). Such a search did not occur here. Arguably, parts of Exhibit A were overbroad—such as Item 4's reference to "all other crimes," and Item 7's reference to "controlled dangerous substances." But under the severance doctrine, any such overbroad language would not render the entire warrant invalid. Rather, "the constitutionally infirm portion of a warrant—usually for lack of particularity or probable cause—is separated from the remainder and evidence seized pursuant to the former portion is suppressed; evidence seized under the valid portion may be admitted." *United States v. Cobb*, 970 F.3d 319, 330 (4th Cir. 2020) (quoting *United States v. George*, 975 F.2d 72, 79 (2d Cir. 1992)); *see also United States v. Jacob*, 657 F.2d 49, 51–52 (4th Cir. 1981) ("Consistent with the standard of our circuit which seeks to avoid suppression of evidence seized pursuant to a warrant because of 'hypertechnical errors,' a defective qualifying phrase will not defeat a warrant which is otherwise sufficiently specific."); *United States v. Walker*, 403 F. App'x 803, 805–06 (4th Cir. 2010) (holding that although the warrant at issue improperly authorized the seizure of controlled substances, the Fourth Amendment did not require the suppression of anything described in the valid portions of the warrant or "lawfully seized on plain-view grounds").

Here, there was no general, exploratory rummaging in the defendant's belongings. Rather, the warrant laid out specific facts establishing probable cause to believe that the Chevy Malibu was used in a robbery and shooting, and the search targeted evidence of that robbery and shooting. The items seized from the vehicle were limited to evidence of the robbery and shooting

13

(*i.e.*, the firearm and lease paperwork) and contraband discovered in plain view while lawfully executing the warrant (*i.e.*, the drugs). The defendant's motion to suppress should be denied.

### E. Motion to Suppress Evidence from Search of Defendant's Car on May 23, 2019 Due to Lack of Probable Cause and Omissions from Search Warrant Application

Again, for the reasons set forth above, the police did not need a search warrant to search the Chevy Malibu, as the automobile exception applied. Therefore, there is no need for the court to reach the issue of whether omissions from the search warrant application defeated probable cause. Nonetheless, the warrant was supported by ample probable cause, and any omissions were immaterial to the probable cause determination.

The defendant asserts that two facts were omitted from the search warrant application in violation of the Fourth Amendment. First, the defendant alleges that Detective Smothers failed to mention "that the license on the gold car at the scene of the shooting cannot be seen." Def. Motion at ¶ 10. Second, the defendant alleges that Detective Smothers failed to mention that the victim was shown a photo array of the defendant but he did not identify anyone. *Id.* at ¶ 11. Neither fact was omitted with an intent to mislead or with reckless disregard for the truth, and neither fact was material to the finding of probable cause.

In *Franks v. Delaware*, the Supreme Court set forth a two-step process for defendants seeking to challenge search warrant affidavits. 438 U.S. 154 (1978). First, a defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by the affiant in the warrant. *Id.* at 155–56. Second, the allegedly false statement must be necessary to the finding of probable cause. Only if these showings are met will a hearing be held at the defendant's request. *Id*. This showing "must be more than conclusory" and should include affidavits or other evidence. *Id.* at 171.

As for the defendant's allegations of omissions in this case, the *Franks* threshold is even

higher.  As stated by the court in *United States. v. Clenney*, "[m]erely identifying factual omissions is insufficient."  631 F.3d 658, 664 (4th Cir. 2011).  The defendant must show that the omissions were designed to mislead and were material to the finding of probable cause.  *Id*.

      1. License Plate

Referring to the camera footage, the defendant alleges that Detective Smothers failed to mention "that the license on the gold car at the scene of the shooting cannot be seen."  Def. Motion at ¶ 10.  The defendant quotes the affidavit, which states, "Investigators compared the LPR image of the gold Chevy Malibu with MD tag 2DPO0705 with the suspect's gold vehicle on the camera footage and determined that they were the same vehicle."  Def. Motion at ¶ 10.  The fact that the license plate of the suspect vehicle in the camera footage cannot be seen is hardly an omission, let alone a material one.  In fact, the defense characterizes it merely as a "significant limitation," Def. Motion at ¶ 10, which does not meet the heightened threshold required to trigger a *Franks* hearing. The above statement in the affidavit is true and accurate—the investigators compared the LPR image of the Chevy Malibu (which followed the victim's van by mere seconds) with the image of the suspect vehicle from the camera footage and concluded that they were the same vehicle.  The defendant fails to make a substantial preliminary showing that a material omission was made in the affidavit with the intent to mislead the reviewing judge.

      2. Photo Array

As discussed above, the victim of the robbery and shooting was shown a photo array[7] and advised the administrator of the array that he did not recognize anyone.  The defense exaggerates the importance of this fact, characterizing the victim's encounter with the suspect as "significant face

---

[7] The defense's motion states that a photo array was shown to the victim on the day of the shooting (May 18, 2019).  Although the victim was interviewed on that date, a photo array was not shown to the victim until May 20, 2019, after the defendant was located with the Chevy Malibu.

to face contact …for over a minute." Def. Motion at ¶ 11. But the assailant was a stranger to the victim, who was caught off guard by a gunman who threatened to kill him. The victim fled for his life as the gunman fired his weapon several times in the victim's direction. It is hardly surprising that the victim was unable to make an identification from a photo array presented to him two days later.

The Fourth Circuit's decision in *United States v. Colkley*, 899 F.3d 297 (4th Cir. 2011) is squarely on point. There, two men (Colkley and Johnson) were convicted of a bank robbery after surveillance photos, eyewitness descriptions and composite sketches led to their photos being placed in two separate photo arrays. 899 F.3d 297, 298 (4th Cir. 2011). Although several witnesses identified Colkley, none of the witnesses identified Johnson out of the array that contained his photo. That fact was not included in the affidavit for Johnson's arrest warrant. *Id*. at 299. Johnson requested and received a *Franks* hearing, and ultimately the lower court ruled against him. *Id*. at 299. However, the Fourth Circuit reversed, holding that a *Franks* hearing should not have been held because there was no substantial preliminary showing that there was an intent to mislead the reviewing judge, and that even if the omitted information had been included, it would not have defeated probable cause. *Id*. at 300. The court reasoned:

> Here Johnson made no showing, and the district court possessed no evidence, that agent Moore had the requisite intent to mislead. The most that the record here reveals about Moore's failure to include the photospread information is that he did not believe it to be relevant to the probable cause determination. At the very worst, he was merely negligent in disclosing all relevant considerations to the magistrate. His acts fell far short of the level of flagrant police action *Franks* is designed to prevent, and a hearing under that decision was not required.

*Id*. at 301. The court went on to clarify that an omission that *may* potentially affect the probable cause determination is not sufficient under *Franks*. The omitted information must be necessary to the finding of probable cause. *Id.* at 301 (citing *Franks*, 438 U.S. at 156).

Here, the details of the robbery and shooting investigation established probable cause to

16

search the defendant's *vehicle*, and whether the victim identified anyone in the photo array was simply not necessary to a finding of probable cause. Based on the totality of the investigation—including the victim's description of the suspect vehicle following him, the LPR hits for the victim's van and the Chevy Malibu within seconds of one another, and the Chevy Malibu matching the image of the suspect vehicle in the camera footage—probable cause existed to believe that evidence of the crime would be found in the car.

The defendant's motion should be denied, as he fails to make a substantial preliminary showing that the affiant had an intent to mislead and or that either of the alleged omissions were necessary to a finding of probable cause.

## CONCLUSION

The defendant's motions should be denied in all respects.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: _____/S/_____
Kim Y. Oldham
Christina A. Hoffman
Assistant United States Attorneys